UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MAURICE D. STOKES,

        Petitioner,

  v.                                    Case No. 23-cv-206-pp

RANDALL HEPP,[1]

        Respondent.

---

**ORDER CONSTRUING MOTION (DKT. NO. 1) AS INCOMPLETE *HABEAS* PETITION AND ORDERING RESPONDENT TO RESPOND TO PETITIONER'S MOTIONS FOR STAY FOR THE PURPOSE OF EXHAUSTING STATE REMEDIES (DKT. NOS. 1, 6)**

---

On February 14, 2023, the court received from the petitioner, who currently is incarcerated at Waupun Correctional Institution and representing himself, a "Motion to File §2254 Petition for Writ of Habeas Corpus And Stay to Exhaust Newly Discovered Evidence Claims." Dkt. No. 1.

The petitioner began by explaining that on April 15, 2011, he'd been charged with reckless homicide, party to a crime for the "shooting death of Terry Baker by Stokes alleged co-actor Cyrus Brooks." Id. at 1. He explained that on May 17, 2011, the charge was amended (as to the petitioner) to first-degree recklessly endangering safety/party to a crime and use of a dangerous

---

[1] Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts states that if the petitioner is in custody under a state-court judgment, the petition must name as respondent the state officer who has custody. The court has substituted Warden Randall Hepp of the Waupun Correctional Institution as the respondent.

1

weapon. Id. The petitioner and co-actor Brooks had separate trials. Id. The petitioner says that even though he was never alleged to have been the shooter, after Brooks was convicted, "the state amended the charge against [the petitioner] to the more serious first-degree intentional homicide, party to a crime, use of a dangerous weapon, and possession of a firearm by a felon . . . ." Id. (He explains that "[t]he felon in possession" of a firearm charge was dismissed prior to trial. Id.)

The petitioner explained the post-conviction motions he'd filed in 2014 and afterward. Id. at 1-2. He then stated that he "intend[ed] on filing" a *habeas corpus* petition "on time," but stated that he had "a few unsettled issues" with his postconviction attorney, who would be mailing the petitioner an affidavit explaining that the attorney's assistant never mailed the decision on his petition for review. Id. at 2. The petitioner stated that he was getting close to his one-year AEDPA [Antiterrorism and Effective Death Penalty Act] deadline and asked the court for a stay so that he could exhaust his state court remedies. Id. The petitioner stated that he planned to file a §974.06 motion in state court, based on newly discovered evidence from three eyewitnesses who'd given statements on the day of the offense. Id. at 2. He stated that he'd hired a private investigator to conduct follow-up interviews of the witnesses, who'd seen the victim being shot, had spoken to the victim and had waited with him for the paramedics to come. Id. at 2-3. The petitioner asserted that "[t]his information was provided to" his post-conviction attorney before filing the petitioner's state-court appeal, and informed the court that he would be "filing

2

ineffective assistance of postconviction counsel for not raising these claims in the circuit court, while he sent letters to the courts letting them know that he need exten[s]ions to review this evidence before going back to the circuit court, with the other issues." Id. at 3.

The petitioner also explained that there was a conflict of interest with his "prior attorney Michael Chernin." Id. The petitioner asserted that in 2005, Chernin had represented the petitioner in a case against Xavien Bates, who was the victim of the 2011 shooting. Id. The petitioner explained that in February 2011, Chernin took a case for Bates, and then in April 2011, Chernin began representing the petitioner; the petitioner indicated that Chernin "represented both [Bates and the petitioner] up until October of 2011; then withdrew at the states request because of conflect [sic] with him now testifying against [the petitioner]." The petitioner stated that

> [i]n this case, Chernin was my lawyer while Bates was the victim, in this same incident Chernin switches up, now he represents Bates to testify against me, in a case that he represented me in while Bates was the victim.

Id. The petitioner asserted that the State's decision to file the more serious homicide charge against him was the result of Chernin's conflict of interest. Id.

The petitioner further asserted that his trial attorney failed to raise and submit "a detailed confession that was given by the person that turned themselves in and confessed to in full detail." Id. The petitioner explains that the attorney added this person to the witness list, but did not call the person at trial and admitted that she was ineffective. Id. at 3-4. Finally, the petitioner

3

asserted "prosecution misconduct, on behalf of the state with witnesses, evidence, and charging." Id. at 4.

The petitioner concluded that he was "simply requesting a stay to stop AEDPA time frames and to exhaust all [his] state court remedies" before filing his federal *habeas corpus* petition. Id.

On March 9, 2023, the court received from the petitioner a "motion to clarify the record/ruling on motion to stay and stop AEDPA time frame to exhaust all remedies." Dkt. No. 6. In this pleading, the petitioner asked the court to rule on the February 2023 motion and "stop the time," indicating that he'd never received a ruling or confirmation of receipt of his request. Id. He stated that he "may get [his] unresolved issues taken care of and may not have to file in your court," but asked the court to "accept" his request and "get back with [him] soon." Id.

A review of the public docket for State v. Stokes, Case No. 2011CF1652 (Milwaukee County), available at https://wcca.wicourts.gov, confirms that on June 28, 2012, a jury convicted the petitioner of first-degree intentional homicide, that from April 15, 2011 to November 28, 2011 he was represented by Attorney Michael L. Chernin and that his lawyer at the time of trial was a woman.

Section 2244(d)(1) of Title 28 states that a person has one year to file a petition for a writ of *habeas corpus*. That one-year period begins to run from the latest of the date on which the judgment became final "by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §2244(d)(1)(A). Section 2254 prohibits a federal court from granting *habeas* relief to a person in custody under the judgment of a state court "unless it appears that—the applicant has exhausted the remedies available in courts of

the State." 28 U.S.C. §2254(b)(1)(A). This means that before someone in custody under a state-court judgment may seek *habeas* relief, he must give the Wisconsin courts a full opportunity to review his. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Such a "full opportunity" "includes presenting the claims to the state's highest court in a petition for discretionary review." Hicks v. Hepp, 871 F.3d 513, 530 (7th Cir. 2017) (citing Boerckel, 526 U.S. at 845). A federal district court has the authority to order a stay and abeyance of a federal *habeas* petition that contains unexhausted claims while a petitioner returns to the state court to exhaust his state remedies. Rhines v. Weber, 544 U.S. 269, 276-77 (2005); Dolis v. Chambers, 454 F.3d 721, 724-25 (7th Cir. 2006) (vacating district court's dismissal of a petitioner's wholly unexhausted *habeas* petition and remanding with instructions for the court to consider a stay of the federal proceedings under pre-Rhines circuit authority). "Stay and abeyance should be available only in limited circumstances." Rhines, 544 U.S. at 270. A district court should grant a stay when "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Id. at 278. The Supreme Court has instructed district courts that they should not stay mixed petitions "indefinitely," and "should place reasonable time limits on a petitioner's trip to state court and back." Id. at 277-78.

A federal district court does not have the authority to extend a "strict, statutorily mandated filing deadline." Socha v. Pollard, 621 F.3d 667, 670 (7th Cir. 2010) (Socha I) (citing Bowles v. Russell, 551 U.S. 205 (2007)). But the one-year AEDPA statute of limitations "defense is not jurisdictional. It does not set forth an inflexible rule requiring dismissal whenever its clock has run." Id.

5

at 671 (quoting Holland v. Florida, 560 U.S. 631, 645 (2010), which quoted Day v. McDonough, 547 U.S. 198, 205 (2006)). "This suggests that an order accepting a filing after the limitations period has run is not beyond the power of the district court." Socha I, 621 F.3d at 671. Rather, such an order is effective "if it can meet the standards for equitable tolling that the Court described in *Holland*." Id. Perhaps more to the point, "it is possible to view a motion [to extend the AEDPA deadline] as the actual petition for a writ of habeas corpus, filed in an incomplete form but with a promise to furnish supporting documentation later." Id. at 672.

The petitioner's motion asserts facts that could arguably meet the Holland equitable tolling standards. To be entitled to equitable tolling, the petitioner must show "'(1) that he has pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Holland, 560 U.S. at 659 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). The petitioner's motion alleges that his post-conviction attorney's assistant never mailed him the decision on the petition for review (presumably the Wisconsin Supreme Court's decision); he says he learned of the decision "by looking [himself] up on the computer at the law library in Waupun Correctional Institution," and that when he was able to speak with his post-conviction lawyer by phone, the petitioner learned that the decision had been issued months earlier, on June 22, 2022. Dkt. No. 1 at 2. Although a "garden variety claim of excusable neglect" does not warrant equitable tolling, the court does not know enough facts to dismiss out-of-hand the possibility that, if the petitioner missed the one-year deadline, equitable tolling would apply.

More relevant is the question of whether the petitioner's motion can be viewed as the actual, albeit incomplete, petition for *habeas* relief. Rule 2(c) of

6

the Rules Governing Section 2254 Cases in the United States District Courts lists several requirements for a §2254 petition. It requires that the petition specify all grounds for relief available to the petitioner, that it state the facts supporting each ground, that it state the relief requested, that it be printed or typewritten or legibly handwritten and that it be signed under penalty of perjury.

The petitioner's motion mentions 28 U.S.C. §2254, indicates that he wants to file a petition for a writ of *habeas corpus* and mentions his state-court conviction. Dkt. No. 1. It is reasonable to infer that the petitioner is trying to vacate or overturn his intentional homicide conviction. See Socha v. Pollard, No. 08-C-994, 2011 WL 2457539, at *3 (E.D. Wis. June 15, 2011). This meets the Rule 2(c)(3) requirement that the document "state the relief requested." The petitioner's motion is neatly handwritten; this meets the Rule 2(c)(4) requirement that the petition be "printed, typewritten, or legibly handwritten." The motion specifies several grounds for relief—newly-discovered evidence (presumably of innocence), ineffective assistance of post-conviction counsel, ineffective assistance of trial counsel (both the alleged conflict of interest by Attorney Chernin and by the attorney who represented the petitioner at trial) and prosecutorial misconduct. That meets the Rule 2(c)(2) requirement. The motion also explains some facts supporting these grounds; that meets the Rule 2(c)(2) requirement. Although the motion does not meet the Rule 2(a) requirement that the petitioner name as the respondent the state officer who has custody of him (the motion lists the respondent as the State of Wisconsin), and although it is not signed under penalty of perjury as required by Rule 2(c)(5), the court concludes that the petitioner's motion is the "functional equivalent" of what Rule 2 requires in a *habeas* petition.

7

The court will deem the petitioner's February 14, 2023 motion a preliminary, incomplete *habeas* petition. The court will set a deadline by which the respondent may respond to the petitioner's request that the court stay the petition to allow him to go to state court and exhaust his remedies. The court also will give the petitioner an opportunity to reply. After the court has decided whether to stay the case, the court will provide the parties further instruction on briefing the petition.

The court **CONSTRUES** the petitioner's Motion to File §2254 Petition for Writ of Habeas Corpus and Stay to Exhaust Newly Discovered Evidence Claims as an incomplete §2254 *habeas* petition with a filing date of February 14, 2023. Dkt. No. 1.

The court **ORDERS** that if the respondent wishes to respond to the petitioner's motions for a stay pending exhaustion of state-court remedies, he file that response by the end of the day on **May 19, 2023**. If the petitioner wishes to reply, he must file that reply in time for the court to *receive* it by the end of the day on **June 2, 2023**.

Dated in Milwaukee, Wisconsin this 26th day of April, 2023.

        **BY THE COURT:**

        _____
        **HON. PAMELA PEPPER**
        **Chief United States District Judge**

8

Case 2:23-cv-00206-PP   Filed 04/26/23   Page 8 of 8   Document 7