UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MAURICE D. STOKES,

        Petitioner,

v.

        Case No. 23-cv-206-pp

MICHAEL MEISNER,

        Respondent.

**ORDER GRANTING PETITIONER'S MOTION FOR STAY (DKT. NO. 30) AND ADMINISTRATIVELY CLOSING CASE**

    On May 15, 2024, the petitioner, who is incarcerated at Fox Lake Correctional Institution and is represented by counsel, filed a document titled "Amended Petition for Writ of Habeas Corpus Per 28 U.S.C. §2241 and Amended Motion for Stay." Dkt. No. 30 at 1. He filed this document in response to the court's February 8, 2024 order directing the petitioner to file an amended petition and a motion to stay these proceedings so that he could exhaust his state court remedies. Dkt. No. 23 at 8. The respondent opposes the motion to stay. Dkt. No. 36.

    The court will grant the motion for stay and administratively close this case to allow the petitioner to exhaust his state court remedies.

**I.    Background**

    On February 14, 2023, the petitioner—who at that time was incarcerated at Waupun Correctional Institution and was representing himself—filed a "Motion to File §2254 Petition for Writ of Habeas Corpus And Stay to Exhaust Newly Discovered Evidence Claims." Dkt. No. 1. A jury had convicted the

1

petitioner of first-degree intentional homicide on June 28, 2012. Id. at 1; see also State v. Stokes, Milwaukee County Case No. 2011CF1652 (available at https://wcca.wicourts.gov). After detailing his prior postconviction motions, the petitioner stated that he "intend[ed] on filing" a *habeas corpus* petition "on time," but explained that he had "a few unsettled issues" with his postconviction attorney. Dkt. No. 1 at 1–2. The petitioner stated that he was getting close to his one-year AEDPA [Antiterrorism and Effective Death Penalty Act] deadline and asked the court for a stay so that he could exhaust his state court remedies. Id. at 2. The petitioner stated that he planned to file a Wis. Stat. §974.06 motion in state court based on newly discovered evidence from three eyewitnesses who'd given statements on the day of the offense. Id.

The court addressed the petitioner's motion in an April 26, 2023 order, construing the motion as a "preliminary, incomplete *habeas* petition." Dkt. No. 7 at 8. The court ordered that by May 19, 2023, the respondent could respond to the petitioner's request for a stay. Id. Instead, the respondent filed a motion for a more definite statement, arguing that the allegations in the incomplete petitioner were insufficient to allow him to evaluate whether a stay was warranted under Rhines v. Weber, 544 U.S. 269, 275-77 (2005) or how to answer (or move to dismiss) the claims. Dkt. No. 12 at 2.

Shortly thereafter, the petitioner obtained counsel, and the court granted several requests for extensions of time for the petitioner to respond to the respondent's motion for more definite statement. Dkt. Nos. 13, 15, 17, 19. In his response, the petitioner conceded that his petition was an incomplete "placeholder." Dkt. No. 20 at 3, 5. But he did not address the Rhines factors, contending instead that the respondent did not "directly oppose[] a stay." Id. at 8.

2

The court granted the respondent's motion for a more definite statement, but because the petitioner had not made an argument regarding his entitlement to a stay, the court did not rule on whether he was entitled to one. Dkt. No. 23 at 7–8. The court ordered the petitioner to file an amended petition using this district's form. Id. at 8 (citing Civil Local Rule 9(a) (E.D. Wis.)). It explained that the petitioner "may file an amended motion to stay, describing his unexhausted claims and addressing the standard for a stay and abeyance under Rhines." Id. at 8.

On May 15, 2024, the petitioner filed what appears to be a combined amended petition and a motion for stay, but did not follow the court's order requiring him to use the court's form. Dkt. No. 30. Normally the court would require the petitioner to refile his petition using the form, as the court had ordered.[1] In the interest of efficiency, however, the court will review the noncompliant petition and address the motion to stay in its current form.

## II. Amended Petition

### A. The Petition

The petitioner begins by stating that "this petition remains a placeholder." Dkt. No. 30 at ¶6. He states that "[w]hether this court grants a stay and if so the manner in which the state courts resolve claims that are not presently exhausted may substantially affect the desired final form of this motion." Id. After recounting the factual and procedural background of the petitioner's underlying conviction and the postconviction proceedings in state court, the petitioner states that his "[e]xhausted claims are summarized here

---

[1] There is a reason the court requires petitioners to use the court's form when seeking *habeas* relief. The form asks for all the information the court needs to make initial determinations about timeliness, exhaustion and other screening issues.

3

briefly although not all may be independently cognizable under federal law." Id. at ¶31. He asserts that "he was denied a fair trial and due process of law through the weight of violations." Id. He contends that it was ineffective for his state postconviction counsel to fail to "federalize[]" his claims in state court. Id.

The petitioner states that appellate counsel preserved on appeal two issues related to newly discovered evidence: that trial counsel was ineffective for failing to investigate, uncover and present evidence and that newly discovered evidence required a new trial. Id. at ¶33. The petitioner concedes that the latter claim is not cognizable on *habeas* review but argues that trial counsel's effectiveness is a cognizable ground that the petitioner has exhausted. Id. The petitioner states that he intends to raise a claim of ineffective assistance of appellate counsel relating to counsel's performance in raising the newly discovered evidence issues in state court. Id. at ¶36. He concedes that this claim is unexhausted. Id.

The petitioner states that he has exhausted three issues related to the improper admission of "other acts" evidence at trial: trial counsel was ineffective by disclosing other acts evidence, the court erroneously admitted testimony regarding other acts and the jury instructions regarding other acts evidence were "grossly erroneous." Id. at ¶42. He does not opine whether these claims are cognizable on *habeas* review.

The petitioner identifies three unexhausted claims he intends to pursue in state court: failure to make use of newly discovered eyewitness testimony, a Sixth Amendment violation based on trial counsel's alleged conflict of interest and prosecutorial misconduct/vindictive prosecution. Id. at ¶47. When discussing the potential claim for ineffective assistance of counsel in relation to the first issue, the petitioner's counsel drops in a footnote that *he* served as one

4

of the petitioner's postconviction counsel and that his performance may be implicated in any possible claim of ineffective assistance. Id. at ¶56 n.1. Acknowledging the potential conflict, the petitioner's counsel asserts that "it was never the intention of Petitioner or counsel that counsel continue to represent him in habeas proceedings" and says that "his agreement with Petitioner is only to maintain a stay in federal court." Id. at ¶67.

    B.    <u>Analysis</u>

One glaring issue with the petitioner's amended petition is that it is not on the court's form. Because the petition is drafted in a complaint-style format, it is difficult for the court to determine the claims that the petitioner wishes to bring on *habeas* review and whether he has exhausted them. The petitioner himself is unclear on that, referring again to the amended petition as a "placeholder." The petitioner's claims regarding his various counsels' performance generally are cognizable on federal *habeas* review. See <u>Cook v. Foster</u>, 948 F.3d 896 (7th Cir. 2020) (ineffective assistance of trial counsel); <u>Smith v. Gaetz</u>, 565 F.3d 346, 352 (7th Cir. 2009) (ineffective assistance of appellate counsel). To the extent that the petitioner is challenging the trial court's admission of certain evidence, that may not be cognizable on *habeas* review because "[a] federal court examining a *habeas corpus* petition does not have jurisdiction to interpret whether the state courts correctly applied state law." <u>Hendrix v. McCaughtrey</u>, 14 F. Supp. 2d 1085, 1086 (E.D. Wis. 1998) (citations omitted).

Screening the petitioner's "placeholder" claims at this point is somewhat premature because the petitioner concedes that his petition contains both exhausted and unexhausted claims. A federal court "may not adjudicate mixed petitions for *habeas corpus*, that is, petitions containing both exhausted and

5

unexhausted claims." Rhines, 544 U.S. at 273 (citing Rose v. Lundy, 455 U.S. 509, 510 (1982)). In Lundy, the Supreme Court required district courts to dismiss "mixed petitions" without prejudice and allow the petitioners to return to state court and exhaust the unexhausted claims. Id. (citing Lundy, 455 U.S. at 522). About fifteen years later, however, Congress passed the Antiterrorism and Effective Death Penalty Act (AEDPA), which required an incarcerated person to file a federal *habeas* petition within one year of the date on which the state court judgment becomes final. Id. (citing 28 U.S.C. §2244(d)). Recognizing that if a district court dismissed a "mixed petition" and required a petitioner to return to state court, the petitioner might be barred from returning to federal court by the AEDPA statute of limitation, the Supreme Court concluded that a district court could, if it chose to, stay the federal *habeas* case (rather than dismissing it) and allow the petitioner to return to state court without losing his ability to seek federal *habeas* review. Id. at 276 (citations omitted).

The Supreme Court has cautioned that "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Id. at 277. Even if a petitioner shows good cause, "the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." Id. Finally, the Court has instructed district courts that they should not stay mixed petitions "indefinitely." Id. The Court has held that "district courts should place reasonable time limits on a petitioner's trip to state court and back." Id. at 278.

Because the petitioner filed a mixed petition, the court could dismiss the entire petition without prejudice. If the court were to do that, however, it is likely that by the time the petitioner returned to state court and litigated his

6

unexhausted claim to the highest level of the state court system, his one-year period for filing for federal *habeas* relief would have expired on his exhausted claims. Whether the petitioner can proceed with his petition turns on whether the court will grant a stay and abeyance.

### III. Motion to Stay

#### A. Parties' Arguments

The petitioner argues that a stay is appropriate because he has meritorious unexhausted claims and he has good cause for his failure to exhaust them. Dkt. No. 30 at ¶44. The petitioner argues that newly discovered eyewitness evidence was provided to postconviction counsel, but that counsel did not raise it to the state court. Id. at ¶48. The petitioner contends that this testimony "convincingly negates central elements" of witness testimony presented at trial. Id. at ¶54. He argues that it is "a near certainty" that the outcome at trial would have been different had the jury seen this evidence. Id. at ¶55. The petitioner argues that postconviction counsel erred by failing to raise either a newly discovered evidence claim or an ineffective assistance of trial counsel claim related to this evidence. Id. at ¶56. In the alternative, the petitioner argues that he could raise insufficiency of the evidence as grounds to overturn his conviction, which he characterizes as a due process violation. Id. at ¶60.

The petitioner asserts that the unexhausted claims "have a very high potential to be stronger" than the exhausted claims. Id. at ¶63. As to the reason for his delay in exhausting the claims, the petitioner argues that he was not aware of the state supreme court's decision on his last postconviction motion until early 2023 due to prior counsel's failure to inform him of it. Id. at ¶65. The petitioner argues that he promptly filed his *habeas* petition after he

7

independently discovered the court's decision. Id. The petitioner contends that he has been working diligently with counsel on a draft motion to file in state court to raise his unexhausted claims and says that he anticipates "very little additional delay" before filing the motion. Id. at ¶68.

The respondent argues that the petitioner has not shown that his claims are potentially meritorious, asserting that the proposed claims would likely be denied on state law grounds. Dkt. No. 36 at 4. The respondent argues that Wis. Stat. §974.06(4) and State v. Escalona-Naranjo, 185 Wis. 2d 168 (1994) require that a petitioner raise all his grounds for relief in his first postconviction motion unless he has a "sufficient reason" for failing to do so. Id. at 5. The respondent contends that ineffective assistance of postconviction counsel is a "sufficient reason" only where the new claims are "clearly stronger" than those raised by postconviction counsel. Id. The respondent argues that the petitioner could have raised his newly discovered evidence claims in any one of his prior three postconviction motions. Id. The respondent argues that because the petitioner had several postconviction attorneys, he must prove that all of them were ineffective, which is an "extraordinary" burden. Id. at 5–6. The respondent argues that the court should not stay the case so that the petitioner can exhaust claims that would be procedurally barred. Id. at 6.

The respondent also argues that the petitioner's newly discovered evidence claim is not independently cognizable on *habeas* review. Id. at 7. He argues that the evidence itself is not strong enough to support an actual innocence claim, even if such a claim existed on *habeas* review, nor a sufficiency of the evidence claim. Id. at 8–9.

The respondent contends that the petitioner's claim for a Sixth Amendment violation resulting from his trial counsel's alleged conflict of

interest is not likely to succeed. Id. at 9–11. He argues that counsel withdrew from representing the petitioner once the potential conflict was discovered, and that in any event, he did not represent the petitioner at trial. Id. at 10. The respondent also argues that there is no clearly established federal law on this issue to support a cognizable *habeas* claim. Id. at 10–11.

The respondent argues that the petitioner's vindictive prosecution claim is not potentially meritorious. Id. at 11. He contends that there is no basis for a vindictive prosecution claim where a prosecutor increases charges before trial due to the defendant's decision not to plead guilty. Id. (citing Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978)). The respondent argues even assuming that the prosecutor did increase the petitioner's charges because he decided to go to trial, that is not grounds for a vindictive prosecution claim. Id. at 12.

B.  Analysis

Again, courts may stay claims if dismissing the petition would jeopardize the petitioner's ability to later file a timely *habeas* petition. Rhines, 544 U.S. at 275. But the petitioner must establish that he "had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Id. at 278.

It appears that the petitioner is asserting that he has good cause for his failure to exhaust because his appellate and/or postconviction counsel was ineffective. See Dkt. No. 30 at ¶46. "[A] petitioner may be able to establish good cause by showing that, because of his counsel's ineffective assistance, he could not exhaust his state court remedies." Yeoman v. Pollard, Case No. 14-CV-225, 2015 WL 4600851, at *2 (E.D. Wis. July 28, 2015), aff'd, 875 F.3d 832 (7th Cir. 2017) (citing Morris v. Bertrand, Case No. 03–C–1078, 2008 WL 2412948, at *2

9

(E.D. Wis. June 12, 2008); Dismuke v. McCaughtry, Case No. 04–C–1126, 2006 WL 3512951, at *1 (E.D. Wis. Dec. 4, 2006)). The court concludes that the petitioner has good cause for failing to exhaust his claims.

At this early stage, the court cannot conclude that the petitioner does not have potentially meritorious claims. Although the court shares the respondent's concerns that the petitioner's claims may be procedurally barred, the petitioner also has raised ineffective assistance of counsel claims, which might excuse his failure to raise assert these claims in prior postconviction motions. This court cannot say with certainty how the state courts will rule on the petitioner's unexhausted claims. His claims are potentially meritorious under Rhines.

The court has no reason to believe that the petitioner has engaged in dilatory litigation tactics. His motion says that he was unaware of the state supreme court's ruling on his last postconviction motion because counsel failed to notify him of it. When the petitioner learned of the ruling, he promptly filed this *habeas* petition and sought a stay. The court is satisfied with the petitioner's efforts under the third Rhines factor.

The court will grant the plaintiff's request to stay the federal proceedings while he exhausts his state remedies. The court will stay and administratively close the federal case until the petitioner has exhausted his claims in state court. Within thirty days of the date upon which his state court remedies are exhausted, the petitioner must file a motion asking this court to reopen his federal case. The court then will reopen the case and order the petitioner to file an amended petition ***on the court's standard form***. At that time, the petitioner should clarify the claims that he is raising and whether he has exhausted them. The court cautions the petitioner that he should use his time

in state court to exhaust *all* claims that he wants to raise in his amended federal *habeas* petition. Administratively closing the federal case will preserve the original petition date.

## IV. Conclusion

The court **GRANTS** the petitioner's motion to stay this federal *habeas* case. Dkt. No. 30.

The court **ORDERS** that this case is **STAYED** and **ADMINISTRATIVELY CLOSED** until the petitioner has exhausted his state court remedies.

The court **ORDERS** that within thirty days after the conclusion of his state court proceedings, the petitioner must file a motion in this case (captioned "Motion to Reopen"), informing the court that the state court proceedings are finished and asking the court to reopen the federal case. Once it receives that motion, the court will reopen the case and set a deadline for the petitioner to file an amended petition *on the court's standard form*.

Dated in Milwaukee, Wisconsin this 21st day of February, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**